IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME HOWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3776-MAB |
| | ) |
| ANGELA CRAIN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Alisa Dearmond's Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies (Doc. 45; *see also* Doc. 46). For the reasons set forth below, Defendant Dearmond's Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies is DENIED (Doc. 45).

#### BACKGROUND

Plaintiff Jerome Howard filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Menard Correctional Center (Doc. 1; *see also* Doc. 9). Plaintiff's Complaint generally alleges that Defendants denied him medical care by failing to provide him with his prescribed morning dose of pain medication after he underwent surgery on his right hand and wrist on September 14, 2022 (Doc. 9 at pp. 1-2).

As it relates to Defendant Dearmond, Plaintiff claims that she was the nurse practitioner at Menard who prescribed him tramadol to alleviate the pain following his

surgery, to be administered once in the morning and once at night for seven days (Doc. 1 at pp. 12-13; Doc. 9 at p. 2). However, after Plaintiff was discharged from Menard's medical unit on September 15, 2022, he was not given his morning pain medication on September 16, 17, 18, 19, and 20 (Doc. 9 at pp. 2-3). Plaintiff wrote Defendant Dearmond about the missed doses at that time, but she did not assist him (*Id.*). Consequently, on September 19, 2022, Plaintiff submitted Emergency Grievance No. 223-9-22 to grieve the medication issues he was experiencing (*Id.*; *see also* Doc. 46-1, pp. 4-5). Two days later, on September 21, 2022, Plaintiff began receiving his morning medication again (Doc. 9 at p. 4).

The Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and Plaintiff was permitted to proceed on the following claims:

**Count 1:** Eighth Amendment deliberate indifference claim against Defendants [Crain], Dearmond, Jane Doe for denying Plaintiff his prescribed pain medications in the morning from September 15, 2022-September 21, 2022;

**Count 2:** Eighth Amendment deliberate indifference claim against John Doe sergeant for refusing to assist Plaintiff in securing his medications.

(Doc. 9 at pp. 4-7).[1]

---

[1] Plaintiff's Complaint also raised an Eighth Amendment claim against Warden Wills and a *Monell* claim against Wexford Health Sources, Inc. (*see* Doc. 1 at pp. 12-13). However, the Court's Merit Review Order dismissed both of those counts as insufficient (*see* Doc. 9 at p. 10). Similarly, the Merit Review Order dismissed the Jane Doe Defendant named in Count 1 because Plaintiff failed to provide sufficient information to identify her (*Id.* at pp. 5-6). Defendants Hursel King, Christopher Lindsay, Douglas Krause, and Jimmy Holland were subsequently identified and substituted for the John Doe sergeant named in Count 2 (see Doc. 32).

On September 16, 2024, Defendant Dearmond filed the instant Motion for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies (Doc. 45; *see also* Doc. 46).[2] Plaintiff did not file a response to Defendant Dearmond's motion.[3]

## LEGAL STANDARD

### I.   *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

---

[2] Defendants Crain, King, Lindsay, Krause and Holland withdrew their affirmative defense of failure to exhaust administrative remedies (Doc. 44). Consequently, this Order focuses upon Plaintiff's efforts to exhaust his administrative remedies as it relates to Plaintiff's claim against Defendant Dearmond.

[3] Plaintiff's failure to respond to Defendant Dearmond's Statement of Material Facts is deemed an admission of those material facts to the extent they are supported by evidence in the record (*see* Doc. 46 at pp. 3-4). *See also* SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."); Fed. R. Civ. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). The admission of Defendant Dearmond's material facts, however, does not automatically grant her motion for summary judgment; she must still demonstrate that she is entitled to judgment as a matter of law. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

## II.  Exhaustion Requirements

As outlined in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

## III.  IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017).

To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

**Discussion**

I.   *Emergency Grievance No. 223-9-22, dated 9/19/22*

As stated in Defendant Dearmond's material facts, only one grievance from the period in question was appealed through all stages of the administrative review process (*see* Doc. 46 at p. 4; *see also* Doc. 46-1 at p. 1). Namely, in Emergency Grievance No. 223-9-22, dated September 19, 2022, Plaintiff grieved that he was only receiving the evening doses of his pain medication, even though he was "told that [he] would be receiving" pain medication twice per day (Doc. 46-1 at pp. 4-5). Plaintiff wrote, "I've Complained to Staff[,] health care staff etc[.] So far its been four days and I have only gotten them once a day at night." (*Id.* at p. 4). Plaintiff then emphasized that his evening dose of pain medication wore off by the next morning, thereby leaving him in pain the majority of each day (*Id.* at pp. 4-5). In the "Relief Requested" section, Plaintiff sought to "be given my meds twice a day like the doctor prescribed" and for "someone [to be] held account for this mistake because this could have cost me my hand or my life." (*Id.* at p. 4).

Plaintiff's grievance was deemed an emergency by the Warden on September 21, 2022, and subject to expedited review (*Id.*). On October 11, 2022, Health Care Unit Administrator Angela Crain (who is also a named Defendant in this action) issued a memorandum which found that, based upon a review of Plaintiff's Medication Administration Record, Plaintiff had not received his prescribed, morning dose of pain medicine for the mornings of September 16, 2022, through September 20, 2022 (*Id.* at p. 6). Defendant Crain stated that it was unclear why Plaintiff's pain medication was not dispensed as prescribed on those days, but Plaintiff was seen by "NP Dearmond on

Page **6** of **14**

9/26/22 to follow up and [he] reported his 'pain is better.'" (*Id.*).

In light of Defendant Crain's memorandum, the Grievance Officer found "the issue was appropriately addressed by the medical professionals" and recommended Plaintiff's grievance be affirmed (*Id.* at p. 3). The Warden concurred in the Grievance Officer's recommendation on October 14, 2022 (*Id.*). Plaintiff then appealed the grievance to the ARB, which similarly affirmed his grievance and found that Plaintiff's morning dose of pain medication was not provided from September 16 to September 20, 2022 (*Id.* at p. 2). The ARB concluded by stating that the "Warden is to reiterate staff's compliance with A.D. 04.03.110 – Control of medication and medical instruments." (*Id.*).

II.     *Analysis*:

Defendant Dearmond argues that she is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because Emergency Grievance No. 223-9-22 does not identify her by name or description (*see generally* Doc. 46 at pp. 6-8). Relatedly, Defendant Dearmond avers that Plaintiff's grievance did not identify the claim he is currently proceeding upon against her—that she failed to assist him after he complained to her about the missing morning doses (*Id.* at pp. 7-8). In support, Defendant Dearmond points out that "[t]here does not appear to have been any investigation or determination on the merits of Plaintiff's grievance that he complained to 'staff[,] health care staff[,] etc.' about nurses not dispensing his medication, and they did not assist him." (*Id.* at p. 8).

Defendant Dearmond correctly notes that the Illinois Administrative Code instructs inmates to name or describe each person who was involved in their grievance

Page **7** of **14**

(*Id.* at p. 4). Specifically, section 504.810(c) provides that a "grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." However, "[t]his provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.* In interpreting this provision, numerous cases have held that a grievance must identify who their target is or implicate their target in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing.").

Notably, however, a grievance that is addressed on the merits, whose contents either identifies or implicates its target may be sufficient for purposes of exhaustion. *See, e.g.*, *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (finding that a grievance which complained about the administrative decision to cancel a religious service was sufficient to alert prison administrators as to the individuals it was targeting). "Indeed, we have found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) (citing *Maddox*, 655 F.3d at 722). For instance, in *Gordon v. Rogers*, the

plaintiff complained about "Healthcare staff" not taking his situation seriously following his surgery. 3:17-CV-1302-DRH-DGW, 2018 WL 6977338, at *3 (S.D. Ill. Oct. 16, 2018). The defendants argued the plaintiff's grievance was insufficient to identify them because the grievance only generally named healthcare staff and did not adequately name or describe them. *Id.* The Court rejected the defendants' argument because "[i]t could have been no mystery to the prison who Plaintiff was complaining about when he indicated that he was not receiving adequate post-operative care. A simple review of his medical records, which is what occurred, would have informed the prison of who Plaintiff was complaining about." *Id. See also Zepeda v. Shah*, 3:22-CV-03040-GCS, 2025 WL 958360, at *6 (S.D. Ill. Mar. 31, 2025) ("Not naming defendants in a grievance itself is a mere technical defect where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond."); *Walker v. Robinson*, 3:23-CV-01466-GCS, 2025 WL 915743, at *5 (S.D. Ill. Mar. 26, 2025) ("Furthermore, the Seventh Circuit reasoned that a grievance need only provide enough information to allow prison officials to investigate the issue, even if a specific defendant is not explicitly named in the original grievance.").

Similar to the grievance in *Gordon*, here Plaintiff grieved the actions of health care staff in not providing him with his medication as prescribed following his surgery (*see* Doc. 46-1 at pp. 4-5).[4] Naturally then, the prison would have been alerted to Plaintiff's

---

[4] Alternatively, given that Plaintiff's grievance was written at a time when Plaintiff was not receiving his morning medications, it would be fair to interpret Plaintiff's grievance as challenging the decision to prescribe him pain medication once per day, while also inaccurately telling him he would receive it twice per day (*see, e.g.* Doc. 46-1 at p. 4) (Stating, "I was told that I would be receiving pain meds twice a day" but "I only been getting meds once a day."). While the medical records demonstrate this is not what occurred, there may not have been a way for Plaintiff to know that fact at the time he wrote his grievance.

complaint against the health care staff that he interacted with between 9/16/22 and 9/20/22.[5] *See id.* And the medical records readily identify Defendant Dearmond as a member of health care staff who provided treatment to Plaintiff during the time in question (*see* Doc. 1 at pp. 23, 31-35; Doc. 46-1 at p. 6). *See also Todd v. Shaw*, 3:17-CV-359-DRH-DGW, 2018 WL 5904455, at *3 (S.D. Ill. Aug. 27, 2018), ("Here, Todd specifically identified that Wexford health care staff were involved in the denial of his [medical needs]. Thus, the State was placed on notice that the Wexford health care employees providing Todd with his medical care were implicated by the grievance."); *Bakaturski v. Brookhart*, 2022 WL 1093633 (S.D. Ill. Apr. 12, 2022) (finding grievances that named "healthcare" provided sufficient information to identify a healthcare administrator where the grievance described conduct attributable to someone in the defendant's position); *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842 (S.D. Ill. 2016) ("This information should have provided the ARB enough details to look into Plaintiff's allegations of an assault and the possible individuals involved given the time and location."); *c.f. Brown v. Porter*, 3:24-CV-669-CCB-APR, 2025 WL 1445350, at *2 (N.D. Ind.

---

And, had the underlying issue been a mistake made by the prescriber, Plaintiff's grievance would have been sufficient to identify that individual (which, he alleges was Defendant Dearmond) (*see also Id*. at p. 6).
[5] Furthermore, to the extent raised, the Court rejects the general argument that Plaintiff's grievance failed to adequately identify any individual because it only identified "staff" or "health care staff." Here, Plaintiff's "grievance was [reviewed and affirmed] on the merits at every stage of review without any indication from prison officials that it was procedurally deficient." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id*. at 722. *See also Keith Allen v. Wexford Health Sources, Inc., et al.*, 23-CV-3775-DWD, 2025 WL 1909465, at *5 (S.D. Ill. July 11, 2025) ("The grievances were addressed by the prison on the merits, which suggests they contained enough information for prison to be on notice of underlying issues and those involved even if they were not individually named. As such, the grievances are sufficient to exhaust the claim against Defendant Florence.").

May 20, 2025) (Finding the grievance failed to identify correctional officers when it only complained about inadequate medical care by "nursing staff."). In fact, Defendant Crain's memorandum confirms that prison officials identified Defendant Dearmond as a health care staff member who treated Plaintiff (Doc. 46-1 at p. 6). *See Maddox*, 655 F.3d at 722 (rejecting the defendant's argument that he was not identified where the defendant was given the opportunity to respond to the grievance during the administrative review process). Therefore, the Court finds Plaintiff's grievance sufficiently identified Defendant Dearmond.

Nevertheless, while Defendant Dearmond acknowledges that she was a health care staff member who was identifiable from Plaintiff's medical records, she attempts to distinguish herself from Plaintiff's claim by arguing that "medication line nursing staff failing to dispense prescribed medication is not the type of grievance where the prison would know that Dearmond – a nurse practitioner – was involved just by the nature of the grievance." (Doc. 46 at p. 7). While the premise underlying this contention is certainly reasonable, the fatal flaw with this contention is that Defendant Dearmond did not provide any evidence to support the claimed distinction between herself and "medication line nursing staff." (*Id.*). *See Anderson v. Larry*, 21-CV-944, 2022 WL 17357434, at *13 (N.D. Ill. Dec. 1, 2022) ("It is the JTC Defendants' burden to demonstrate in their summary judgment briefing that neither the October 2018 Grievance nor the April 2019 Grievance properly exhausted Anderson's claims against them.").

Put simply, as the movant, Defendant Dearmond bore the burden of proving that she did not dispense medications and therefore, would not have been easily identified by

Page **11** of **14**

any inquiry into the actions of the health care staff members who dispensed Plaintiff's medication. Yet, she did not provide any evidence to do so. *See, e.g., Anderson*, 2022 WL 17357434 at *13; *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It was not Davis's burden to establish that the grievance process was unavailable; it was the officers' burden to show that Davis did not exhaust available remedies."); *Jones v. Pfister*, 17 C 8789, 2021 WL 1020996, at *6 (N.D. Ill. Mar. 17, 2021) ("That said, a prisoner does not bear the burden of pleading and proving exhaustion. Rather, the defendant bears the burden to show that an inmate did not properly exhaust available remedies."). Thus, Defendant Dearmond has failed to establish that she was not identified or would not have been readily identified by Plaintiff's grieving of health care staff.

Similarly, Defendant Dearmond argues that Plaintiff's grievance only challenged the failure to provide him with his morning medication and did not grieve staff's refusal to assist him after he complained to them of his missing medication (Doc. 46 at pp. 7-8). Defendant Dearmond supports this assertion by emphasizing that the IDOC's analysis of Plaintiff's grievance only addressed Plaintiff's claim of not being given morning medication doses, meaning it did not address Plaintiff's claim that staff ignored his requests for help (*Id.*). Ultimately, regardless of how prison officials interpreted Plaintiff's grievance, the Court's analysis must focus upon the contents of Plaintiff's grievance. *See McDaniel v. Meisner*, 617 Fed. Appx. 553, 557 (7th Cir. 2015) ("We are not persuaded by the defendants' argument that McDaniel's mistake in listing December 13, 2011, at the top of the form prevented them from understanding that McDaniel was seeking relief for the March 8 assault."); *Brian A. Patterson v. Candace Whitman, et al.*, 24-CV-939-PP, 2025

WL 1885743, at *6 (E.D. Wis. July 8, 2025) (Finding the complaint examiner's erroneous rejection of a complaint as having been previously addressed "rendered administrative remedies unavailable to the plaintiff for any claim tangentially related to his first complaint."). And here, Plaintiff's grievance stated that he "complained to … health care staff" about the issue and it had yet to be resolved after four days (Doc. 46-1 at p. 4). To put it plainly, that contention sufficiently identified Plaintiff's claim that health care staff ignored his complaints about not receiving morning medication. Any other ruling would create an incentive to mischaracterize an inmate's grievance so they could later argue that the actual issue had not been exhausted. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (stating that prison officials may not take unfair advantage of the exhaustion requirement).

Consequently, Defendant Dearmond's Motion for Summary Judgment is DENIED (Doc. 45). As the other Defendants have already withdrawn their affirmative defense of exhaustion (Doc. 48), this action is now moving beyond the exhaustion of administrative remedies phase. Accordingly, the stay on merits-based discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

## CONCLUSION

For the reasons discussed above, Defendant Dearmond's Motion for Summary Judgment for Plaintiff's Failure to Exhaust is DENIED (Doc. 45).

**IT IS SO ORDERED.**

**DATED:** July 22, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
